UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

RICHARD WATSON,

        Plaintiff,

v.

RYAN TOMADEWICZ et al.,

        Defendants.
_____/

Case No. 1:24-cv-893

Honorable Jane M. Beckering

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim for the reasons detailed below.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events

about which he complains occurred at that facility. Plaintiff sues the following LCF staff in their individual and official capacities: Corrections Officer Ryan Tomadewicz, Sergeant Zachary Borrows, Corrections Officer Unknown Rhinard, Lieutenant Unknown Carter, Residential Unit Manager Shawnda Cope, Grievance Coordinator Unknown Rohrig, Deputy Warden Russell Rurka, Sergeant Steven Cook, and Warden Bryan Morrison. (Compl., ECF No. 1, PageID.1, 2–3.)

In Plaintiff's complaint, he alleges that on November 2, 2023, Defendant Tomadewicz conducted "a routine shakedown/patdown" of Plaintiff's person, and during the shakedown, Tomadewicz "intentionally grabbed [Plaintiff's] penis and stroked it back and forth."[1] (*Id.*, PageID.4.) Plaintiff then "backed away from Tomadewicz," who "leered at [Plaintiff] through his sunglasses" and "lick[ed] his lips." (*Id.*) Defendant Tomadewicz "told [Plaintiff] he would do this 'again and again' and would be 'back for more.'" (*Id.*) Plaintiff "tried to report the incident immediately to the first shift sergeant, [Defendant] Borrows, and lieutenant, [Defendant] Carter, but was rebuffed with threats of retaliation." (*Id.*, PageID.5.)

When the shift changed, Plaintiff asked Defendants Cook and Cope for a Prison Rape Elimination Act (PREA) complaint, "but they refused [Plaintiff's] request and told him to write up the incident on a blank sheet of paper and submit that to them instead." (*Id.*) Plaintiff submitted this written complaint, and he also "called the PREA hotline to file a verbal complaint." (*Id.*) Plaintiff's verbal complaint was "converted" "into a PREA complaint." (*Id.*) Defendants Rurka, Morrison, and "the Inspector's office" assigned the review of the complaint to Defendant Cook. (*Id.*) Plaintiff claims that he "came to Cook personally after [the] assault," and "[Cook] did not take reasonable measures to keep Tomadewicz separated from [Plaintiff]." (*Id.*, PageID.9.)

---

[1] In this Opinion, the Court corrects the spelling, capitalization, and punctuation in quotations from Plaintiff's filings.

Plaintiff also claims that Defendant Cook "did not interview" Plaintiff or Plaintiff's witnesses. (*Id.*, PageID.5.) Plaintiff further claims that Defendants Morrison, Rurka, Cope, Rohrig, Carter, Cook, Borrows, and unnamed, non-party inspectors "failed or refused to take reasonable steps to isolate [Plaintiff] from Defendant Tomadewicz." (*Id.*)

Plaintiff alleges that Defendant Tomadewicz "continued to sexually harass and retaliate against [Plaintiff]," and "every time Tomadewicz would see [Plaintiff] walking to and from yard or chow call," Tomadewicz would "lick[] his lips while looking at [Plaintiff] and mak[e] comments about how he wanted [Plaintiff]." (*Id.*) Plaintiff also alleges that while his PREA complaint was pending he "began to face" unspecified "harassment and 'retaliation' from Defendants Borrows, Carter, Tomadewicz, Rhinard, Rurka, Cook, Morrison, and Rohrig." (*Id.*)

Plaintiff claims that on November 10, 2023, Defendants Rurka, Carter, and Borrows removed Plaintiff "from his cube and had Tomadewicz and Rhinard handcuff [Plaintiff] and take him to [the] control center" for a strip search and urine drop for drug testing.[2] (*Id.*) Plaintiff alleges that while he was in the control center, Defendants Rurka, Carter, and Borrows instructed Defendants Tomadewicz and Rhinard to conduct a shakedown of Plaintiff's area in the cube and to "flip his area upside down." (*Id.*) Upon Plaintiff's return to his unit, Plaintiff saw Defendant Tomadewicz "standing on top of [Plaintiff's] bed on his religious and legal materials." (*Id.*,

---

[2] When summarizing the claims that he brings in this suit, Plaintiff presents a statement that contradicts this allegation from the body of the complaint. Specifically, when setting forth his claims, Plaintiff alleges that on November 10, 2023, Defendants Morrison, Rurka, Carter, Borrows, and Cope (rather than only Defendants Rurka, Carter, and Borrows) "ordered Tomadewicz to pull [Plaintiff] from his cube." (Compl., ECF No. 1, PageID.9.) The Court must take the *factual allegations* as true at this stage of the proceedings. As such, the Court relies on the allegation in the body of the complaint—which alleges that it was only Defendants Rurka, Carter, and Borrows who were involved in removing Plaintiff from his cube on November 10, 2023— rather than the summary statement in the section of the complaint where Plaintiff summarizes his claims.

PageID.6.) Plaintiff "complained to" Defendants Rurka, Carter, and Borrows that Tomadewicz "shouldn't be anywhere near [Plaintiff] or his property because he had a PREA complaint pending against Tomadewicz." (*Id.*) "They told [Plaintiff] they didn't care about his PREA complaint and that this is what happens when file [sic] complaints against us or staff . . . ." (*Id.*) Plaintiff claims that Defendants Tomadewicz and Rhinard "intentionally destroyed and damaged [Plaintiff's] personal property, including [a] TV, headphones, [and] legal and religious materials," and left his "area in disarray." (*Id.*) Plaintiff "called the PREA hotline again to report harassment and retaliation against him because of his initial PREA complaint." (*Id.*)

On November 11, 2023, when Plaintiff went to breakfast, Defendants Tomadewicz and Rhinard were "outside the chow hall," and "Tomadewicz lick[ed] his lips at [Plaintiff] and demanded a shakedown." (*Id.*) Defendant Rhinard conducted the shakedown, and "Defendant Rhinard groped [Plaintiff's] penis while Defendant Tomadewicz stood in front [of Plaintiff] licking his lips, telling him that he want[ed] him . . . ." (*Id.*) During the shakedown, Defendant Rhinard told Plaintiff that he "need[ed] to know when to fight his battles and when to submit because this was a fight [Plaintiff] could not win." (*Id.*) Thereafter, Plaintiff asked to talk to a sergeant "to lodge another complaint against them." (*Id.*) Defendant Tomadewicz "told Defendant Rhinard to [hand]cuff . . . [Plaintiff] and take him up front for a strip search and a drug test again." (*Id.*) Plaintiff "was escorted up front to be strip searched," and Defendant Borrows "came out and told [Plaintiff]" that he and Plaintiff "were about to get really acquainted since [Plaintiff] liked to file PREA complaints." (*Id.*) Plaintiff claims that he "was also subjected [to] multiple urine drops/drug testing two (2) days in a row." (*Id.*, PageID.7.)

Subsequently, on November 12, 2023, Plaintiff "was reviewed on a false class II misconduct [charge] for disobeying a direct order," which had been written by Defendant

4

Tomadewicz "in retaliation for the PREA complaints filed against [Tomadewicz] on 11-2-2023 and 11-10-2023." (*Id.*) That same day, Defendant Borrows issued Plaintiff "a false class II misconduct [ticket] for destruction and/or misuse of property." (*Id.*) Plaintiff states that the property at issue was the property "that had been damaged by Defendants Rhinard and Tomadewicz" on November 10, 2023. (*Id.*) Defendant Carter was the hearing officer for Plaintiff's class II misconduct hearings, and "Carter refused to allow [Plaintiff] to present a defense or call witnesses." (*Id.*, PageID.12.) Plaintiff claims that during the hearing, Defendant Carter told Plaintiff that if Plaintiff did not "sign[] off [on] his PREA complaint, it would come back to bite him in the ass and that day was today." (*Id.*) Plaintiff alleges that Defendants Morrison, Cope, Rurka, and Rohrig "retaliated against [him] by refusing to provide him with class II appeal forms and denying him of his right to appeal the misconducts." (*Id.*) Plaintiff also alleges that Defendants Morrison and Rohrig placed him on "grievance restriction without [a] valid reason or justification in retaliation for [Plaintiff] engaging in his constitutional right to petition the government for redress." (*Id.*)

Additionally, Plaintiff alleges that he "filed various complaints with" Defendants Cope, Morrison, Rurka, and Rohrig "over the continued harassment, sexual abuse, and retaliation." (*Id.*, PageID.7.) Plaintiff also alleges that at unspecified times, he "spoke directly to" Defendants Morrison, Rurka, Cope, Rohrig, and Carter. (*Id.*) Plaintiff claims that his "complaints were ignored" and "the behavior was encouraged to continue and nothing was done to protect [Plaintiff] from the sexual predators wearing gray [and] black." (*Id.*)

Further, Plaintiff alleges that "Defendants Morrison, Rurka, Cope, Carter, Rohrig, and the Inspector's office were aware of Tomadewicz's and Borrow's and Rhinard's behavior and conduct since 2023." (*Id.*) Plaintiff claims that he and "other LCF inmate population [sic] complained of

5

verbal and physical sexual abuse and/or assault and harassment at LCF but failed [sic] or refused to take steps or implement policies and procedures to alleviate the abuse and sexual harassment." (*Id.*) Plaintiff also claims that "the above Defendants are operating from a widespread systemic custom and/or policy with ignoring inmate complaints, retaliating against inmates who complain with excessive shakedowns that results in the destruction of personal property, harassment, and false misconducts." (*Id.*)

Plaintiff states that at an unspecified time, he "learned from Defendant Cook [that Plaintiff's] PREA complaint was arbitrarily dismissed as unsubstantiated for lack of evidence." (*Id.*)

Additionally, Plaintiff claims that he "complained directly to the above Defendants about his PREA complaint pending against Tomadewicz and [that] Tomadewicz was not supposed to have any conduct or interaction with [Plaintiff] or his property." (*Id.*, PageID.9.) Plaintiff further claims that "each Defendant above told [Plaintiff] that they didn't care about federal law, the[y] only follow orders from their boss and if [Plaintiff] signed off his PREA complaint his stay at LCF would be a lot easier." (*Id.*)

Based on the foregoing allegations, Plaintiff states that he is bringing First Amendment retaliation claims, Eighth Amendment claims, and corresponding state law claims against Defendants.[3] (*See id.*, PageID.4, 8–13.) Plaintiff seeks compensatory and punitive damages, declaratory and injunctive relief, and his "costs of this litigation." (*Id.*, PageID.13.)

---

[3] In this action, Plaintiff specifically identifies the claims that he is bringing in this action—i.e., First Amendment claims, Eighth Amendment claims, and state law claims. (*See, e.g.*, Compl., ECF No. 1, PageID.4, 8.) Because Plaintiff specifically identifies his intended claims, the Court does not construe Plaintiff's complaint to raise any other claims.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendants Cope, Rohrig, and Morrison

#### 1. Liability Based on Conclusory Allegations and Supervisory Positions

As to Defendants Cope, Rohrig, and Morrison, Plaintiff presents the following allegations: (i) Plaintiff alleges in a conclusory manner that Defendants Morrison, Cope, and Rohrig[4] "failed or refused to take reasonable steps to isolate [Plaintiff] from Defendant Tomadewicz" (Compl., ECF No. 1, PageID.5); (ii) without providing any facts or explanation about what the "harassment and retaliation" entailed, Plaintiff alleges that while his PREA complaint was pending he "began to face harassment and 'retaliation' from" Defendants Morrison and Rohrig[5]; (*id.*) (iii) without providing any further explanation as to what he discussed with Defendants, Plaintiff claims that at unspecified times, he "spoke directly to" Defendants Morrison, Cope, and Rohrig[6] (*id.*, PageID.7); (iv) without naming any specific Defendants, Plaintiff claims that his "complaints were ignored" and "the behavior was encouraged to continue and nothing was done to protect [Plaintiff] from the sexual predators wearing gray [and] black" (*id.*); (v) without providing any specific dates or information as to the specific format of his "complaints," Plaintiff alleges that he "filed various complaints with" Defendants Cope, Morrison, and Rohrig[7] "over the continued harassment, sexual

---

[4] In addition to setting forth factual allegations, Plaintiff's complaint contains a number of conclusory statements that he attributes to either all or many of the named Defendants. In this section of the opinion, for clarity, the Court only references, as applicable, Defendants Cope, Rohrig, and Morrison. However, the Court will note the other Defendants who are named in the allegations. As to the allegation above, Defendants Rurka, Carter, Cook, and Borrows, as well as unnamed, non-party inspectors, are named in this allegation.

[5] Defendants Borrows, Carter, Tomadewicz, Rhinard, Cook, and Rurka are also named in this allegation.

[6] Defendants Rurka and Carter are also named in this allegation.

[7] Defendant Rurka is also named in this allegation.

abuse, and retaliation" (*id.*); (vi) without providing any supporting facts, Plaintiff alleges in a conclusory manner that Defendants Morrison, Cope, Rohrig, and the Inspector's office[8] "were aware of Tomadewicz's and Borrow's and Rhinard's behavior and conduct since 2023" (*id.*); (vii) without naming any specific Defendants, Plaintiff also claims that he and "other LCF inmate population [sic] complained of verbal and physical sexual abuse and/or assault and harassment at LCF but failed [sic] or refused to take steps or implement policies and procedures to alleviate the abuse and sexual harassment" (*id.*); (viii) without naming specific individual Defendants, Plaintiff alleges in a conclusory manner that "the above Defendants are operating from a widespread systemic custom and/or policy with ignoring inmate complaints, retaliating against inmates who complain with excessive shakedowns that results in the destruction of personal property, harassment, and false misconducts" (*id.*); (ix) likewise, without naming specific individual Defendants, Plaintiff claims that he "complained directly to the above Defendants about his PREA complaint pending against Tomadewicz and [that] Tomadewicz was not supposed to have any contact or interaction with [Plaintiff] or his property" (*id.*, PageID.9); and (x) again, without naming specific individual Defendants, Plaintiff claims that "each Defendant above told [Plaintiff] that they didn't care about federal law, the[y] only follow orders from their boss and if [Plaintiff] signed off his PREA complaint his stay at LCF would be a lot easier." (*Id.*)

      In the above-listed factual allegations, which are conclusory and do not have supporting facts, Plaintiff has attempted to show that Defendants Cope, Rohrig, and Morrison were personally involved in the alleged violations of Plaintiff's constitutional rights and that there is a policy or custom at LCF related to the harms that Plaintiff sustained, meaning that the conduct is likely to occur again, such that injunctive or declaratory relief would be available to him against Defendants

---

[8] Defendants Rurka and Carter are also named in this allegation.

in their official capacities; however, the *facts* alleged by Plaintiff fall short of showing any such liability. As an initial matter, although Plaintiff presents conclusory statements of claims, he alleges insufficient *facts* to support his conclusory assertions. For example, Plaintiff alleges in a conclusory manner that Defendants Morrison, Cope, and Rohrig "failed or refused to take reasonable steps to isolate [Plaintiff] from Defendant Tomadewicz;" but, he fails to provide any facts about what actual actions these Defendants did or did not take that constituted "fail[ing] or refus[ing] to take reasonable steps." (*Id.*, PageID.5.) Similarly, without naming specific individual Defendants, Plaintiff alleges in a conclusory manner that "the above Defendants are operating from a widespread systemic custom and/or policy with ignoring inmate complaints, retaliating against inmates who complain with excessive shakedowns that results in the destruction of personal property, harassment, and false misconducts" (*id.*, PageID.7); however, this "broad brush" allegation, without additional supporting facts, is also insufficient to hold Defendants liable for the alleged violations of Plaintiff's constitutional rights.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. And, a claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). Additionally, any "[s]ummary reference to a single, five-headed 'Defendants' [or they] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011)). Here, the factual

allegations, as set forth above, are insufficient to show that Defendants Cope, Rohrig, and Morrison were personally involved in the alleged violations of Plaintiff's constitutional rights, and the *facts* presented are insufficient to support Plaintiff's conclusory assertions of a custom or policy.

Moreover, to the extent that Plaintiff seeks to hold Defendants Cope, Rohrig, and Morrison liable due to their supervisory positions, he fails to state such a claim. Government officials, such as Defendants Cope, Rohrig, and Morrison, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *See Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). And, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, the factual allegations set forth above are insufficient to show that Defendants Cope, Rohrig, and Morrison encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. And, any conclusory allegations of supervisory responsibility are insufficient to show that these Defendants were personally involved in the alleged violations of Plaintiff's constitutional rights. *See, e.g.*, *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers*, 368 F.3d at 888.

Therefore, Plaintiff's claims against Defendants Cope, Rohrig, and Morrison that are based on conclusory allegations and Defendants' supervisory positions will be dismissed for failure to state a claim.

### 2.  Liability Based on Personal Conduct

In addition to the factual allegations against Defendants Cope, Rohrig, and Morrison that are listed in the above section, Plaintiff also presents the following allegations against these Defendants, all of which allege some personal conduct by these Defendants: (i) Plaintiff asked Defendant Cope[9] for a PREA complaint, "but they refused [Plaintiff's] request and told him to write up the incident on a blank sheet of paper and submit that to them instead" (Compl., ECF No. 1, PageID.5); (ii) Defendants Morrison, Cope, and Rohrig[10] "retaliated against [him] by refusing to provide him with class II appeal forms and denying him of his right to appeal the misconducts" (*id.*, PageID.12); and (iii) Defendants Morrison and Rohrig placed him on "grievance restriction without [a] valid reason or justification in retaliation for [Plaintiff] engaging in his constitutional right to petition the government for redress." (*Id.*) The Court addresses these allegations below.

---

[9] Defendant Cook is also named in this allegation.

[10] Defendant Rurka is also named in this allegation.

### a.    Written PREA Complaint

As an initial matter, with respect to the allegation that Defendant Cope did not give Plaintiff a "PREA complaint," and instead, told Plaintiff to write the complaint "on a blank sheet of paper," this allegation is insufficient to show that Defendant Cope engaged in any active unconstitutional conduct. (*Id.*, PageID.5.) Plaintiff alleges that after submitting the written complaint as instructed, he also called the PREA hotline, and that his verbal complaint was "converted" "into a PREA complaint"; however, nothing in the complaint suggests that Defendant Cope prevented Plaintiff from filing a PREA complaint. (*Id.*) Instead, Plaintiff alleges only that he was instructed to write the complaint on one type of paper, rather than on some other unspecified "PREA complaint" paper or form. Therefore, based on the facts alleged by Plaintiff, any claims against Defendant Cope regarding the instruction about the manner in which to submit a PREA complaint will be dismissed for failure to state a claim.

### b.    Appeal Forms and Modified Grievance Access

Plaintiff alleges that Defendants Morrison, Cope, and Rohrig "retaliated against [him] by refusing to provide him with class II appeal forms and denying him of his right to appeal the misconducts" (*id.*, PageID.12), and that Defendants Morrison and Rohrig placed him on "grievance restriction without [a] valid reason or justification in retaliation for [Plaintiff] engaging in his constitutional right to petition the government for redress." (*Id.*) The Court construes these allegations to raise First Amendment retaliation claims.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff

that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016). Here, Plaintiff references filing a PREA complaint and grievances, both of which are sufficient to suggest that he engaged in protected conduct for purposes of his First Amendment claim.

Next, to establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

Here, Plaintiff alleges that Defendants Morrison, Cope, and Rohrig "refus[ed] to provide him with class II appeal forms," and Plaintiff alleges in a conclusory manner that he was denied "his right to appeal the misconducts." (Compl., ECF No. 1, PageID.12.) Although Plaintiff did not receive the specific "appeal form" that he wished to receive, besides his conclusory assertion that he was then denied "his right to appeal," Plaintiff fails to provide further information about how "his right to appeal" was in fact denied. For example, is this "appeal form" the only one that can

14

be used to file such an appeal, or could Plaintiff have appealed by submitting any written document? Without additional supporting factual allegations explaining his conclusory allegation, Plaintiff appears to be asking the Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim. Under these circumstances, the factual allegations in the complaint do not show that the actions of Defendants Morrison, Cope, and Rohrig as related to the appeal form constituted an adverse action.

Second, as to Plaintiff's placement on modified grievance access, the Sixth Circuit has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim. *See, e.g.*, *Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *5 (6th Cir. Nov. 9, 2017); *Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam), *abrogated on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005); *Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. Sept. 26, 2001).

Moreover, regardless, Plaintiff's allegations of retaliatory action by Defendants Morrison, Cope, and Rohrig are entirely conclusory. Plaintiff merely alleges the ultimate fact of retaliation without providing supporting factual allegations. Such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not

15

enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Accordingly, for these reasons, any intended First Amendment retaliation claims against Defendants Morrison, Cope, and Rohrig will be dismissed for failure to state a claim.

### 3. Summary

For the foregoing reasons, Plaintiff fails to state any claim upon which relief may be granted against Defendants Morrison, Cope, and Rohrig. Accordingly, all of Plaintiff's claims against Defendants Morrison, Cope, and Rohrig will be dismissed for failure to state a claim.

### B. Defendants Tomadewicz, Borrows, Rhinard, Carter, Cook, and Rurka

Plaintiff raises First Amendment retaliation claims and Eighth Amendment claims regarding alleged sexual touching and alleged failure to protect him from harm against Defendants Tomadewicz, Borrows, Rhinard, Carter, Cook and Rurka. At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Therefore, based on the facts alleged in the complaint, which are summarized above, the Court will not dismiss Plaintiff's First Amendment retaliation claims and Eighth Amendment claims against Defendants Tomadewicz, Borrows, Rhinard, Carter, Cook, and Rurka on initial review.

### C. State Law Claims

When setting forth his claims, Plaintiff states that in addition to his federal claims, he is bringing corresponding state law claims against Defendants. (*See, e.g.*, Compl., ECF No. 1, PageID.4, 9, 12.)

As an initial matter, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v.*

*Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertion that Defendants violated state law fails to state a claim under § 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, Plaintiff's federal claims against Defendants Cope, Rohrig, and Morrison will be dismissed, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against these Defendants. Because Plaintiff continues to have pending federal claims against Defendants Tomadewicz, Borrows, Rhinard, Carter, Cook, and Rurka, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against these Defendants.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims against Defendants Cope, Rohrig, and Morrison will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims against Defendants Cope, Rohrig, and Morrison will be dismissed without prejudice. Plaintiff's First

Amendment retaliation claims, Eighth Amendment claims, and state law claims against Defendants Tomadewicz, Borrows, Rhinard, Carter, Cook, and Rurka remain in the case.

An order consistent with this Opinion will be entered.


Dated:     March 5, 2025              /s/ Jane M. Beckering
                                                                        Jane M. Beckering
                                                                         United States District Judge